**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | NO.: 2:21-cr-000309-CDJ |
| **STEVEN KISH** : | |
| : | |

**SENTENCING MEMORANDUM**

Steven Kish, through undersigned counsel, respectfully submits the following Memorandum in support of mitigation of sentencing in the above-captioned matter.

**I.    PROCEDURAL BACKGROUND**

Steven Kish was charged in a three-count Information on August 11, 2011 and charged with theft from an organization receiving federal funds and aiding and abetting (18 U.S.C. §§ 666(a)(1)(A) and 2); wire fraud (18 U.S.C. § 1343) and money laundering and aiding and abetting (18 U.S.C. §§ 1957 and 2).  On January 10, 2022, he pleaded guilty to all three counts and his sentencing is scheduled for September 27, 2022, before the Honorable C. Darnell Jones, II.  Following the guilty plea on January 10, 2022, Mr. Kish was released on $50,000 O/R bond and has been under the supervision of U.S. Pretrial Services since that date.

**II.   DEFENDANT'S BACKGROUND AND PARTICIPATION IN OFFENSE**

Defendant, Steven Kish is a 66 year-old man who is in poor health.  He suffers from Rickets which has caused bone deformities in the left side of his chest.  He suffered a heart attack in 1998 which required him to be hospitalized for four weeks.  He also suffers from coronary artery disease and hypertension.  His medical conditions require him to take five different medications on a daily basis amd has to be routinely monitored for his heart problems.

1

He is a citizen of the United States and has no prior criminal history. The Defendant's father, Stephen Kish, Sr., died in 1989 at age 68 from an aneurysm and his mother, died in 2020 at age 95 after suffering a stroke. Mr. Kish has two sisters that are still living, Roxanne Wuller (age 65) and Gale Ann Murphy (age 72). His younger brother, Paul Kish, died of a heart attack in 2014 at age 54.

Mr. Kish was married for the first time in 1974 and was divorced in 1980. There was one child born of the marriage, Christina Kish, who was five years old when the divorce took place. Mr. Kish gained full custody of Christina and raised her as a single parent until he remarried in 1984. That marriage ended in divorce in 1990. Mr. Kish has not remarried since and is not currently involved in a romantic relationship.

Mr. Kish's daughter Christina has two children, Andrew, age 27 and Julia, age 22. Mr. Kish's grandson, Andrew was paralyzed from the waist down due to an automobile accident in June 2021. His granddaughter, Julia has a two-year old son, Exavier who had his right eye removed due to a rare form of retinal cancer and who also has autism. Mr. Kish has built wheel-chair ramps for Andrew and spends his days helping in the care of Andrew and Exavier.

The Defendant has no criminal history, and the instant offense is his only arrest and his only negative contact with law enforcement in his life.

The instant offense involved a fraud and bribery scheme between managers and directors in the Bridges and Buildings Department (BBD) of the Southeastern Pennsylvania Transportation Agency (SEPTA). The defendant was a manager with SEPTA and along with other defendants, obtained cash and personal goods from vendors who then billed SEPTA for items that were not provided to SEPTA.

The Defendant was one of seven SEPTA employees charged in the scheme and there

2

were two vendors charged in the scheme as well. All of the other related defendants have been sentenced and their sentences range from probation to 60 months in prison.

Mr. Kish is extremely remorseful for his participation in the criminal act for which he was charged and for which he has pleaded guilty. His remorsefulness is noted in the Presentence Report. His involvement was a total aberration from an otherwise exemplary law-abiding life as a father, grandfather, great-grandfather and friend that many people admire and look up to.

Accompanying this Memorandum and attached as **Exhibit "A"** is a collection of letters of support from Mr. Kish, his family and his friends which the Defendant asks this Court to consider in arriving at an appropriate sentence. A review of the many letters of support show that Mr. Kish is a man who has touched many lives and has had an extremely positive impact on his community. His remorse for the shame he has caused his family and brought upon himself is real and substantial.

Although the defendant did not cooperate against anyone else in this matter, he has accepted full responsibility for his involvement in the crime.

Mr. Kish prays that this Court will vary from the Sentencing Guidelines and impose a sentence of eighteen (18) months of incarceration.

### III.  CONSIDERATION OF GUIDELINES

The Federal Sentencing Guidelines have been a staple of the legal landscape in the Federal court system since 1987. However, the Supreme Court's pronouncements in *Booker* have regraded that landscape dramatically. *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)(mandatory application of Sentencing Guidelines violates Sixth

Amendment right to jury trial and therefore courts must apply them in an advisory fashion)[1]. No longer are the courts obliged to impose sentences based on the Guidelines. Indeed, it has been specifically observed that treatment of the Guidelines as mandatory would be a "significant procedural error…". **Gall v. United States**, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). The **Booker** case effectively promotes what had "… been uniform and constant in the federal judicial tradition[:] for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." **Koon v. United States**, 518 U.S. 81, 113, 116 S.Ct. 2035, 2053, 135 L.Ed.2d 392, 422 (1996). The Guidelines offer a "starting point" subject to consideration of the basic factors considered in sentencing. *See generally* 18 U.S.C. §3553 (Imposition of Sentence identification of factors for consideration). In offering direction to the courts in imposing sentences, Congress mandated:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
> (1) the nature and the circumstances of the offense and the

---

[1] "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. [Citations omitted.] Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act] the provisions that make the Guidelines binding on district judges.... [W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." **Booker**, *supra* 543 U.S. at 233, 125 S.Ct. at 750, 160 L.Ed.2d at 643 (Stevens, J., opinion of the Court in part).
…
As a remedy, the Court excised the provisions that made the federal guidelines mandatory. This had the effect of making the federal guidelines advisory only. **Id**. at 245-46, 125 S.Ct. at 738, 160 L.Ed.2d at 651 (Breyer, J., opinion of the Court in part).

characteristics and history of the defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
….

*Id*. at §3553(a). Thus stated, this court is obliged to assess the relevant factors and then determine and impose the minimally adequate sentence. In other words, the sentence may deviate from the guidelines under proper circumstances and may even vary beyond the mitigation and aggravation departures. See *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009)(discussion of variance sentencing and applicable legal principles). The concept of variance and its application was further refined by the Third Circuit which vacated the trial court's sentence below the applicable Guideline sentence (in spite of an agreement by both the prosecution and the defendant that the guideline range was reasonable) and remanded the matter for resentencing. *United States v. Lychok*, 578 F.3d 214 (3d Cir. 2009). The *Lychok* case is instructive. It speaks in terms of the sentencing's procedural as well as substantive reasonableness. *Id*. at 217. The procedural side of the sentencing equation requires the court to calculate properly the Guidelines and adequately explain its sentence. *Id*. It is submitted that the calculation of offense level 20 and criminal history category I submitted as part of Mr. Kish's presentence investigation is correct and results in a guideline range of 33-41 months. The Government has made a sentencing recommendation of a sentence at the higher end of the guideline range. However, because it is the defense position that the court should consider the

substantive side of the equation, this memorandum will serve to assist the court in articulating a sentence that deviates from the Guidelines.  In assuring substantive reasonableness, the sentencing court is called upon to "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range."  *Id*. *citing Gall*, *supra* at ___, 128 S.Ct. at 597, 169 L.Ed.2d at 458.   A variance does not require the presence or elaboration of "extraordinary" circumstances and, as *Booker* made clear, the sentencing decision is reviewed against an abuse of discretion standard.  *Gall*, *supra* at ___, 128 S.Ct. at 594-95, 169 L.Ed.2d at 455.  After giving the parties a full opportunity to suggest an appropriate sentence, the court must consider the statutory considerations enumerated in the guidelines enabling legislation.  *Lychok* at 217-18 *quoting* 18 *U.S.C.* §3553(a).  As a final point, after establishing the appropriate sentence, the sentencing court must bear the laboring oar in explaining the sentence to create the possibility of meaningful review and to manifest fairness in the process. *Lychok* at 218.

     A final observation: the defense asks the court to consider the imposition of a term of imprisonment of 18 months.  Such an outcome does not diminish the prosecution or the severity of the crime.  It would offer a reasonable compromise to the imposition of a term of imprisonment of 33 to 41 months (as suggested by the Guidelines) that would not serve any real salutary purpose except to meet the blind calculus of the Guidelines.  With these principles in mind, the defense offers the following to allow the court to structure a reasoned, just and fair sentence and thereafter to render a ready explanation of the circumstances that justify - if not mandate - that sentence.

**IV.  <u>FACTORS THAT WARRANT VARIANCE FROM GUIDELINES</u>**

    **A.  Age:**

In the instant case, Steven Kish is 66 years old and has had no negative contact with law enforcement in his life other than for the instant offense. He lost his job as a result of this result and as a consequence of the instant conviction, he forfeited his pension with SEPTA that he accrued during his 25 years of employment form his being hired in 1994 until he retired in November 2019. He would have received $3,700 per month in pension benefits for the rest of his life. Attached hereto and marked as **Exhibit "B"** is a life expectancy table showing that the life expectancy of a 66-year-old male is 17.38 years which equates to 208.5 months. At $3,700 per month, if he lives to his current life expectancy, Mr. Kish will lose $771,450 in pension payments. He has also forfeited health insurance and prescription drug benefits which he would have received for the rest of his life. As a result of his losing his job and his going to jail for some period of time, he will have a very difficult time securing employment in the future and due to his failing health, future employment is unlikely. Clearly, the Defendant has already suffered financially and will also have to pay restitution in this matter in the amount of $259,019 pursuant to an agreement with the Government.

The Defendant and society would best be served by the Court sentencing the Defendant to a term of imprisonment of 18 months that would allow Mr. Kish to get home as soon as possible.

    **B.**    **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

**Characteristics of the Defendant -** The Defendant was charged and pleaded guilty to violating 18 U.S.C. §§ 666(a)(1)(A) and 2, theft from an organization receiving federal funds and aiding and abetting; 18 U.S.C. § 1343, wire fraud; and 18 U.S.C. §§ 1957, money laundering and aiding and abetting. The Defendant was manager with Septa and utilized his position as a

7

manager to work with other employees at SEPTA and vendors to defraud SEPTA of hundreds of thousands of dollars.  Mr. Kish will be ordered to pay $259,019 and has already forfeited $168,198.93 of that amount from the sale of a property.  Mr. Kish did not initiate the scheme and was not the mastermind of the scheme but he embraced the scheme after being recruited into the scheme by other managers of SEPTA in 2013, participated in the scheme until 2019.

In this case the Defendant has no criminal history and has shown tremendous post-offense rehabilitation.  He is well respected in the community and has helped numerous people in a myriad of ways over the years that are highlighted in the many letters that were previously referenced in this memorandum.  The Defendant is viewed as a wonderful man and a friend to many members of the community.  He is a fine neighbor who is quick to assist anyone in need, and is a great help to his daughter in the care of his grandson who is paralyzed and his great-grandson who is only two years old and has lost an eye to cancer.  None of the above excuses Mr. Kish's crimes, but it blunts many of the more negative aspects of the offense, especially in terms of its nature and effect.  In support of the above the Defendant would offer the following excerpt from the letter written by his grandson, Andrew Kish:

> ***He is the only father figure I had in my life.  He used to take me to work with him and take me out.  And since my car accident, he comes over and helps me.  He also helps my mom with my medical stuff too.  He also takes me out in my wheelchair.***

As well as the following excerpt from the letter written by his daughter, Christina Kish:

> ***My father has helped me raise my two children.  He also helps us with my grandson who just had eye cancer and now my son was in a bad car accident and then again he is there for us again.  He will come over and sit with my son so I can work and support us.  I believe taking him away from us will really push me over the edge.  He is the only one I can count on for any help and he is the only person I have left.***

There are many similar letters to that of his daughter and grandson in the many letters of support that were received in this matter, Steven Kish is a man that has had a positive impact on friends and family and should be allowed to get back to the community in which he is so valued and so needed during these trying times.

**Family Circumstances –**

In *United States v. Martin*, 520 F3d 87 (1st Cir. 2008), the Court affirmed a downward variance from the guideline range based in part on "the support that the defendant stood to receive from his family (and) personal qualities indicating his potential for rehabilitation;" post-Booker, "policy statements normally are not decisive as to what may constitute a permissible ground for variant sentence in a given case. In this case the Defendant stands to receive tremendous support from his daughter as he is needed to help her with her son and grandson who have severe medical difficulties and require care and support which Mr. kish has been providing in large measure. Additionally, the potential for rehabilitation in this Defendant is guaranteed based upon the fact that the instant matter is his only negative contact with law enforcement in his life and based on the tremendous support he has received.

In the Defendant's own words, he states:

> **Your Honor, all I ask is that you please judge me for who I really am. I committed a criminal act but I assure you that is not who I am. My family, friends and people that know me still believe in me and support me even though I made a serious mistake. As I have read the many letters of support that they have sent I feel even more embarrassed by my actions that have necessitated them writing letters. However, I am overwhelmed and humbled by the love and support they have given me, and I will work diligently for the rest of my life to show them that their support was not in vain. I only hope I can one day forgive myself as they have.**

Mr. Kish has also treated with Jane Iannuzzelli, M.Ed., M.A., to try and gain some awareness into what caused him to commit the instant offenses as well as to help

9

prepare him for his sentencing and expected incarceration and to help give him the coping skills to get through his present set of circumstances. Ms. Iannuzzelli has written a report that has been provided to the pre-sentence investigator and to the government and the report is attached hereto and marked as **Exhibit "C"**. It is also expected that Ms. Iannuzzelli will testify on behalf of the Defendant at the sentencing hearing currently scheduled for September 27, 2022. The testimony of Ms. Iannuzzelli will not be in an attempt to mitigate the crime of the Defendant but rather, it is hoped that it will serve to elucidate to the Court, who the Defendant is and what his impact is to his family and the community and what he has learned form this ordeal. Some of what she will testify to includes the following:

> **This past year has been very challenging for the family. In February 2021, Mr. Kish's great grandson was diagnosed with retinal cancer in one eye and the eye was removed. The child Exavier now age two (2), has a prosthetic eye. The doctors believe that the child is now cancer free. Exavier is also in the process of an evaluation for autism and can be difficult to manage at times. While Exavier's father is involved in the child's life, he does not live in the same home as Exavier and Exavier's mother. Mr. Kish helps with Exavier's care. In June 2021, Mr. Kish's grandson, age 27, was a passenger in a car that was involved in a serious accident, killing one of the passengers and leaving his grandson paralyzed from the waist down. Mr. Kish goes to the family home several times a week to help with the care of his grandson, as well as his great grandson. He also provides transportation to doctor's appointments as needed. Mr. Kish has fitted the home with ramps and other changes to meet his grandson's needs. When possible, he has built the accommodations himself and when unable to do so, he has helped pay to have the home fitted for his grandson. His daughter, who is a nurse's assistant, is currently on a leave of absence from her job in order to care for her soon but will likely be returning to work soon.**
>
> ----------------------
>
> **Learning about Steven Kish has been a bit like peeling an onion for him and for this psychologist. Peeling that onion for Mr. Kish has been painful and had to proceed slowly. He is still in the process of taking a look at the core of the onion, his psychodynamics. Mr. Kish has come to realize that SEPTA**

**was not to blame for his inability to cope with the obligations of his position. Mr. Kish has come to realize that is was up to hi to find a solution to his unhappiness and to accept his weaknesses.  Mr. Kish has always perceived himself as strong and resourceful.  Facing his own limitations has been a slow and difficult process for him but he has worked in therapy to reach that end.  His core personality finds his actions to be indefensible and inexcusable.**

**The Nature of the Offense –**

That Congress sought to criminalize the charged offenses and not leave the prosecution in the hands of the Commonwealth points to the seriousness of the offense.  Indeed, in that sense, every federal crime is serious.  However, in this case the Defendant has accepted responsibility for his actions and has participated in extensive therapy to address his behaviors and has helped his family through terribly difficult times as described above.  His most sincere hope I that he be sentenced to an appropriate period of incarceration but to the shortest term possible so that he may return to his family and continue to support them as he has done in the past and is currently doing.

**C.    3553(a)(2) – The Necessity of Sentence**

**Need to protect the public from further crimes –**

In *United States v. Grossman*, 513 F3d 592 (6th Cir. 2008), the court affirmed a downward variance from 120 months in prison to 66 months with 10 years supervised release, and observed that the sentencing court "accounted for 3553(a)'s concerns that the sentence protect society and deter future criminal conduct", but that "it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release".  Other than for the instant offense, Mr. Kish has led a crime free exemplary life for almost sixty years.  He has demonstrated an unwavering commitment to family, friends and community.

The situation that is Mr. Kish's current life offers little basis to be concerned for "further crimes" to be committed by this defendant.

**Need to Provide Just Punishment for the Offense**

While justice is blind as to the individual, it should not be blind as to the circumstances. Whether Mr. Kish is sentenced to 18 months or to 33 months or to 41 months, the object lesson to the public is learned; you cannot steal from an organization receiving federal funds. Any imposition of sentence will underscore the proposition. However, lengthy incarceration serves only as an unnecessary exclamation point – one that indiscriminately sacrifices the Defendant's family and the community that he serves. As can be seen by the many letters submitted, lengthy incarceration will also deprive many others of the positive contributions Mr. Kish offers it his family and the community. If the sentence lacks proportionality to the circumstances, the community will lose respect for the legal system and the deterrence aspect fails.

The rationale that incarceration will deter others from committing crimes is simply not true. There is no evidence to support that proposition. Arthur Koestler once pointed out "that when thieves were hanged in the village square other thieves flocked to the execution to pick the pockets of the spectators."

**Need to Reflect the Seriousness of the Offense**

A term of incarceration of 18 months will not diminish the seriousness of the crime but would show that significant and real post-offense rehabilitation warrants compassion from the Court and the public without diminishing the offense. In *United States v. Chapman*, 356 F3d 843 (8th Cir. 2004), the Court found that truly exceptional rehabilitation alone can, in rare cases, support a downward departure…

In giving a sentence of incarceration as retribution for the offense, one may consider

12

Oliver Wendell Holmes' statement that "Retribution is simply vengeance in disguise".

### D.  3553(a)(3) – The Kinds of Sentences Available

This is the crux of the matter.  As the statute requires, care should be given to the mandate calling for this court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)."  18 *U.S.C.* §3553.  That reference to paragraph (2) relates to the goals of punishment, public protection and rehabilitation.  These factors are amply encompassed by the immediately preceding analysis (Necessity of Sentence). The Guidelines call for incarceration.  Yet, the offered analysis shows little cause to justify an incarceration sentence.  A variance should be invoked for the reasons outlined.  The statutory mandate which seeks legitimacy and proportionality in sentencing should not be blindly sacrificed to the Guidelines.  A sentence of 18 moths incarceration in lieu of a more significant sentence would offer the same benefits to the system without the exorbitant costs to the Kish family and their community.  Such a sentence would meet Congress's clear directive that the sentence should be no greater than necessary to meet the positive goals of punishment, community protection and rehabilitation.

### E.     3553(a)(4),(5) – The Guideline Sentence and Any Pertinent Policy Statement Issued by the Sentencing Commission

A sentencing judge has the discretion to consider a variance under the totality of the 3553(a) factors (rather than one factor in isolation) and such a variance would be reasonable in an appropriate case. *United States v. Arrelucea-Zamudio*, 581 F3d 142 93d Cir. 2009.

In the instant matter, the Defendant clearly is a perfect candidate for a variance.  As Mr. Kish had led a crime-free life for almost 60 years, the stigma of a conviction has caused and will continue to cause more harm to Mr. Kish than it would to a defendant who has not enjoyed the

13

same type of standing in the community.  Mr. Kish has already suffered and will continue to suffer reputationally and financially.  He has made some progress towards restoring his reputation and continues to help his family who really need him home as soon as possible due to their significant needs.  A term of lengthy incarceration would be devastating to Mr. Kish and his family on so many levels and this Court is urged to issue a downward variance from the guidelines and impose a sentence of 18 months of incarceration.

> **F.     3553(a)(6) The Need to Avoid Unwarranted Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Invariably, one of the crucial issues surrounding a Guideline sentence is its relation to other sentences for the same charges.  One of the key goals of the Guidelines was to promote and produce uniformity in sentencing.  The concept being based on fairness; an individual sentenced anywhere in the country for the same federal crime should anticipate a similar sentence, independent of the locus of the sentencing court.   While laudable in theory, the devil is in the details.  Not all cases are alike as the various permutations of crime are manifold.  The Sentencing Guideline Commission recognizes the wide range of possibilities in sentencing and collects data to monitor the process.  The Commission analyzes the data to assess various characteristics of the federal sentencing process and the actual application of the Guidelines in the field.  Statistics relating to sentences imposed regarding any type of fraud/theft case, show that in year 2020 only 47.4% of the sentences nationwide fell within the guidelines and that there were only 0.4% of the cases that departed upward.  A total of 40.8% of the cases resulted in variances or downward departures. (Source: U.S.S.C. 2020 Datafile, USSCFY20 attached hereto and marked as **Exhibit "D"**). Such a significant number of sentences imposed below the Guideline range offers precedent to suggest that a departure or variance in this case would not be

extraordinary.  The Government will suggest that the Defendant needs to be sentenced to a term of imprisonment higher than the 30 months received by Rodney Martinez and the 30 months received by Mark Irvello as the government states that Mr. Kish has a higher amount of culpability amongst the defendants.  The defense takes exception to the Government's argument, both Defendant Martinez and Defendant Irvello faced higher guideline ranges that Mr. Kish and both were charged with bribery and Mr. Kish was not.  This court need not be shackled by concerns for disparate sentencing.  Many other judges in many other cases have exercised informed reason and critical judgment in exercising their judicial discretion and imposed sentences at variance with the applicable Guideline range. Rigid, unthinking adherence to the Guidelines may be emblematic of discipline but it is a thoughtless discipline, unworthy of the court and our system of justice.  Ultimately the sentencing judge is offered freedom to fashion a sentence appropriate to the specific circumstances presented.  Mr. Kish should not be treated as a grim statistic.

**V.     CONCLUSION**

It is strongly suggested that after consideration of the sentencing factors as they relate to this particular Defendant and upon consideration of the Defendant's particular circumstances, the goals of sentencing are reached by imposition of a sentence of 18 months.

                                      Respectfully submitted,

                                            spp8973
BY:     _____
                                      STEPHEN P. PATRIZIO, Esquire
                                      Dranoff & Patrizio, P.C.
                                      Attorney ID # 23263
                                      1500 JFK Blvd., Suite 1205
                                      Philadelphia, PA 19102
                                      (215) 569-2121

## CERTIFICATE OF SERVICE

I hereby certify that I caused Defendant's Sentencing Memorandum to be filed electronically and that copies have been served via electronic mail upon the following:

Louis D. Lappen, Assistant United States Attorney<br>
United States Attorney's Office<br>
615 Chestnut Street<br>
Philadelphia, PA 19106

spp8973

_____

STEPHEN P. PATRIZIO, ESQUIRE
Attorney for Defendant, Steven Kish